Next matter before us today is MVT Services v. Great West Casualty Company 23-2070. May it please the court, counsel. My name is Dan Worker. I represent Great West Casualty Company in this matter. If it pleases the court, I'd like to reserve three minutes for rebuttal, time permits. And again, that will be your responsibility. Yes, ma'am. This case involves a coverage dispute in which the district court awarded extra contractual damages on the basis that there were consequential damages associated with a breach of duty to defend on behalf of my client, Great West. The Texas law in this case is very clear that absent a claim for bad faith, extra contractual damages are not available in the case. It's undisputed in this case that Great West paid its full policy limits, provided a defense when requested at the end to MVT, and exhausted its limits in settlement of that case. Two issues of damages were claimed as consequential damages in this case, which we think is clear error in the case, and it's governed by a de novo standard of review because it's an improper application of the law. In that regard, I think applying Texas law to this case on that issue where the bad faith case was dismissed shortly before trial is conclusive on the issue, and those damages need to be reversed in this case. So we're asking the court to overturn the award of those consequential damages that the court entered, as well as the attorney fees portion of that case. Here the district court made some findings. One was that Great West's wrongful denial of coverage precluded the timely assertion of the exclusive remedy defense, and drastically enlarged MVT's exposure in the Parada litigation. And the second is the gross negligence claim that would have remained could have been settled within the policy limits. You have to convince us that those findings are clearly erroneous, don't you? First of all, Your Honor, with regard to the de novo standard, if the court finds that the only damages that are allowable are our policy limits once we honor our duty to defend and the reimbursement of reasonable attorney's fees for the defense of that case. So right before trial, we didn't offer a judgment with regard to the $49,000 of claimed expense of attorney's fees plus interest, which was not accepted. And we paid our full policy limit in settlement of that case. We were defending a bad faith case in the district court in summary judgment. That issue was conceded. So it's our position in this case, Your Honor, that under a de novo standard of review, this court applying Texas law cannot find that they could award extrajudicial damages above and beyond our policy limit, which is what the district court did in this case. If the court wants to consider this as a consequential breach of contract case, we believe that the law is very clear in insurance coverage cases. In a contract, you're only obligated to pay the policy limits of that contract. You're not obligated to pay extra contractual damages unless you acted in bad faith. Here, clear ruling by the district court that there was no bad faith. It was our position. The case should have ended at that point in summary judgment. It didn't. The court felt that there were consequential damages associated with this breach of contract and that they were foreseeable. And there was an issue of fact, according to the court, on whether or not those damages were foreseeable to allow an award of consequential damages stemming from a breach. Again, it's our position, Your Honor, that the law is very clear on that issue, that absent any bad faith conduct, those damages cannot be awarded. To answer your question, Your Honor, during the course of that trial on this consequential damage issue, there were two elements of damages, as the court pointed out. The first element of damage was reimbursement of a $250,000 SIR, a self-insured retention under the Kramer-Foerster policy for the court's indulgence. That policy was taken out by NVT in January of 2013 before this accident even occurred. It doesn't matter. I mean, everybody agrees your policy covered the accident. Well, Your Honor, there was a dispute as to whether or not that policy was in effect at the time of the accident. You're not contesting that now, are you? Your Honor, when this issue of this timing of when that policy expired under Texas law was brought to Great West's attention, it was two weeks before trial. Great West... But you'd already... You were on notice of all the facts with respect to your denial. You knew the law as good as they did, and they tendered it, and you denied it. That is correct. So we don't... I mean, you don't get to say, well, you know, really, we just figured it out two weeks before trial. I mean, you've got to live with the data that you denied it. We did, Your Honor. We acknowledged coverage, and we paid our policy limits in defense of NVT in that case. So the answer to my original question was you're not disputing that there was coverage. We acknowledge that there was coverage for that loss based on the circumstances that were presented to us at that time, yes. Well, there was coverage from the time of the accident. We did not dispute that fact. Okay. And you wrongfully denied it until two weeks before trial. We accepted defense two weeks before trial when it was re-tendered to Great West. Yes, Your Honor, we did. And at that time, the district court said that it was too late to try to assert a workers' comp defense. Yes, let's talk about the timing of the assertion of that defense. The evidence... Without your policy, they didn't have a workers... They didn't have such a defense. They did have a defense. And in fact, Your Honor, before we acknowledged coverage two weeks before trial, they did raise that defense. Before Great West retracted its denial on the case, they raised the defense. They raised the defense before they put us on notice and filed a declaratory judgment action on this timing issue as to when our policy expired. So the fact that there is no policy, I think if you look at the record in the case, their counsel, Silverman, who put in place this ERISA plan, the non-subscriber agreement that they were operating on, that created the sister company, OEP, where they transferred their so that they wouldn't have to pay a work-out premium instead of taxes. He acknowledged that they could raise that defense even if they didn't have a policy. He acknowledged that they could have both a work-out policy. You had a dentist trial, right? Yes, Your Honor, we did. Before the district court. And the district court made findings of that. Correct. And conclusions of law. Correct. Okay, findings of fact, they've got to be clearly erroneous for you to overturn them here. Right. Some of those findings of fact are very difficult for you in advancing your position because the district court found that it was your, that the reason they didn't assert the defense was because of your wrongful denial, that if they had asserted the defense before two weeks before trial, they could have used it, and that as a result, they incurred substantially more damage. That were the rulings by the court, yes, Your Honor. With regard to the findings of fact, I suggest to the court those were conclusions and opinion, and they were not facts. The substantial evidence in this case, the factual record. Okay, so if you're challenging it because it's not supported by substantial evidence, that means you acknowledge it's a fact and that you're trying to claim it's clearly erroneous. I believe that there were not facts that met that burden of proof, and the court erred in finding those factual findings, when in reality they were speculation, they were conclusory, they were self-serving statements, and they were not issues of fact. The facts in the case establish that MVT set its own course with regard to this legal strategy of defending negligence cases in Texas. Before the loss, they transferred all of their employees to OEP. They set up a- And I think this is completely irrelevant, whether they were going to transition to a different insurance structure is absolutely irrelevant to the issue before this court, which is your policy covered this accident, and you denied coverage, and they went to a workers' comp defense. Which was based on the legal strategies that they had put in place before. So let's talk about that. So I go to you and I say, this is work comp, I want you to pick up the defense and indemnify me. And you say, sorry, you have no coverage. Go to Crum and Forrester. So I go to Crum and Forrester, if I go to them and say, hey, this is a work comp case that has been wrongfully denied, but I want you to pick up the defense and assert those defenses for me, what is Crum and Forrester going to say? But those are not the facts. Go back, go back. With all due respect, Your Honor, the facts are they went to Crum and Forrester first, and they had intended to invoke that policy, because that was their legal strategy of defending these negligence claims. They said from the very beginning, this is not a work comp claim. Because that's the legal structure that they set up. They were defending those cases in Texas as not having employees, as a legal strategy to avoid liability if they were their own employees. You know, they sent them to another company arguing that they were independent contractors. And they bought this policy to protect them for those work-related injuries under an ERISA plan. And that was their affirmative defense that they raised all throughout the underlying litigation. Until the point they got a $12 million demand in that case, and at that point, they sought out additional coverage under the Great West policy to protect them to pay for a settlement in the case. Hey, you made all these arguments to the district court, and the district court ruled against you making factual findings that, unless you can show me they're clearly erroneous, preclude you taking a different position here, factually. Well, again, I mean reverting back to Your Honor, that they can't award those consequential damages because they're extra contractual. That's a legal argument. Correct. You're fine with it. It's a factual argument. It is our position that they didn't establish facts. They established speculation, self-serving testimony, and it was contradicted by the overwhelming weight of evidence in the case. So there is clear error under that standard under the law. We believe that it warrants reversal for that reason. I have two minutes left at the court. I could address some of those questions at the rebuttal. Thank you. Your Honors, and may it please the Court, my name is Chance Fletcher. I am appearing here on behalf of MVT, the appellees. The core of this dispute turns on two factual findings by the district court, which are reviewed for clear error. First, MVT would have diverted a simple negligence claim had Great West accepted coverage properly in 2013. Second, the remaining gross negligence claim would have been resolved for less than $1 million. Both of those findings are supported by sufficient evidence in the record. Great West merely points to contrary evidence and attempts to retry this case on appeal. The court should reject that, and I would like to clarify two or three statements made by my friend on the other side. First, as far as Texas law is concerned, they concede in their blue brief, quote, uninsured can recover damages in excess of limits and defense fees with a showing either that the claim could have been resolved for the policy limits or bad faith. So with respect to the legal argument, I believe that they have already conceded that in their blue brief. Second, there was some disclarity about whether there's a dispute about coverage being in effect on the day of this accident. There is a stipulation in this record. You can find that at Supplemental Appendix 1-147 that stipulates that there was a coverage in effect on the day of this accident. Third, with respect to raising the defense, the exclusive remedy defense without coverage, as Your Honors noted in the opening argument, we did not assert that defense, and the district court found that we did not assert that defense, because Great West told us that we were a non-subscriber. We tendered the defense to Great West. They immediately emailed us back and said, you don't have coverage under us. There was a follow-up conversation where they said the same thing, and they confirmed that in their formal denial. And as far as clear error, it is our position that I believe they also concede that these factual findings are reviewed for clear error in the reply brief. You can find those at Gray Brief, page 8, and Gray Brief, page 12. And respectfully, Your Honors, I believe that those things resolve this case. But if Your Honors have any questions, I'd— What is the evidence supporting the two key factual findings that you started your argument with? Yes. So first, that the exclusive remedy defense would have been invoked, save for the denial, the wrongful denial, is—so Great West told us before we answered—so one of their arguments in their brief is that we filed this answer before their denial. But the district court found, and there's evidence supporting in the record, testimonial evidence and also documentary evidence, that they told us about two weeks before that via email, and then there was a follow-up conversation on November 6, which I believe was six days before we answered, that they communicated to us that they would deny, that they're going to deny, they don't think there's any coverage. So as a result of that, we have our lead attorney in the case, for most of the case, Skipworth, who testified, quote, that he absolutely would have invoked the exclusive remedy defense. The district court found that to be credible testimony, and I don't see any meaningful evidence in the record to the contrary. We also have testimonial evidence from Steve Blanco, another attorney helping out on the case, that said the exclusive remedy defense was not invoked because we were told that we were non-subscribing. Okay. I mean, I only had one question, so. Well, there was a second fact, too. Oh, yes. In the second fact, I apologize. And that was, I think, essentially that you could have settled within the policy limits. Yes, and I believe there's clear and sufficient evidence to support that in the record. We have the lead attorney for most of the case testifying that he assigned approximately $3 to $5 million to the simple negligence claim only. I mean, isn't that speculative, though? I mean, how do you establish that through an attorney saying, oh, I didn't give that any weight? Yes. I think that there's evidence in the record that it's not speculative. You can find this at Supplemental Appendix 3, around 460. Skipworth testified that he personally investigated the facts of this case. He looked at the trucking logs. He looked at the truck, all the information that could possibly come in at trial. And he said, I determined that there's just no evidence that anyone did anything knowingly. There's no gross negligence. We also have testimony that the internal counsel, Silverman, did the exact same thing and then assigned that there's zero potential liability for gross negligence. You can find that testimony around Supplemental Appendix 3, 345 and thereabouts. What was the contrary evidence to that? What did Great Western come forward with to say that that's not right, that gross negligence claim was hanging out there and scaring everyone? In my view, they say basically two things in their blue brief. The first is that it's this switching to non-subscriber argument, which I don't believe is particularly relevant to this. And then the second thing is they say that Robert Skipworth testified that he suggested to MBT that they might be underinsured for purposes of the Prada litigation because he said blue brief 25. But as I just explained, if you read that testimony, it's very clear that he has assigned that value to the simple negligence claim only. He says that explicitly in trial. The district court credited that evidence and found that the claim is going to be resolved for less than a million dollars. OK. So neither of those things implicate the gross negligence aspect of the case. That's correct. If your honors do not have any further questions, I'm happy to rest on the papers for the Well, what about the attorney's fees, the challenge to the attorney's fees here? Yes. So there's a couple of elements to the challenge. The attorney's fees that are awarded by the district court or the attorney's fees for Steve Blanco. As I understand the attorney's fees that are awarded by the district court, the only objection to the amount is if we were to reverse on some of the claims. But there's not any objection to the specific amount or the way it was calculated. Am I correct about that? I believe you're exactly correct about that, your honor. And I also would just note that the appendix didn't even include the order that awarded these attorney's fees. So under the rules of the court, I think that you don't even have to consider the question, even if you were to reverse on anything else. OK. So I was focused on Mr. Blanco. Oh, on Mr. Blanco. Great.  Mr. Blanco. First, there's a stipulation, again, in the pretrial order saying that Great West, quote, by denying coverage, Great West lost its ability to control, influence, or object to the manner in which MBT chose to staff the defense. The district court based its finding that Blanco fees were entitled to reimbursement on that stipulation and on basically the, go ahead, your honor. Well, I mean, what if they went out and hired 30 lawyers? I mean, were there no limits on that stipulation? Your honor, I think that the law recognizes a reasonability limitation. However, I do not think that that reasonability limitation is argued in their blue brief. They do make an argument that says the case law only requires them to retain one lawyer. That argument's completely unsupported by any law in their blue brief. I'm not sure what law there is for that. But there, of course, is, in insurance law, a limitation of reasonability. But there just wasn't a challenge to whether it was reasonable. And the district court found that these were reasonable unnecessary attorney's fees, as a matter of fact, which also would have to be challenged in a reasonability challenge to those fees. I don't see any further questions. Your honors, I respectfully ask that this court affirm the judgment of the district court in remand for award of appellate attorney's fees. Thank you. I'll do it in reverse order. With regard to the fees, we did contest them on reasonableness. And we asked the court to look at the amount of recovery compared to the amount that they spent. And they, in fact, reduced their own attorney's fees because they were pursuing this bad faith claim during the entirety of the litigation, which incurred a lot of our defense with regard to the case. Mr. Fletcher, why don't you address this proposition that you said that absent bad faith, extra contract damages are not allowed under Texas law. And it is argued that's only half of the possibilities. The other half is that it could have been resolved for policy limits. No, that's taken out of context. We were citing the bad faith standard. So there's two types of bad faith. Bad faith failure to settle. So there would have to be a demand made within our policy limit in which we rejected the demand and not paid it. And then there was an extra contractual award. Bad faith, extra contractual, we would have to pay that damage. The second component is bad faith denial in the case, which they never brought or pursued. And the court never found that we didn't have a bona fide coverage dispute, which would result in a bad faith denial. So under either scenario, the facts didn't support any bad faith on the part of Great West to open up its limits. So as a matter of law, the court should reverse the finding of those consequential damages that exceed our policy limit. So you're saying the proposition that it could have been resolved for policy limits is embedded into the other bad faith? Only if there's a demand to settle. And that's the problem that they have in the gross negligence case and their proposition of the court's finding that we could have, if they would have raised the work comp exclusivity at the beginning of the case, that the plaintiff's attorney would have settled the case for a million dollars. The evidence in the trial was, according to Skipworth, plaintiff's counsel said he'd never take a million dollars to settle the case. There was never a demand made by plaintiff's counsel. Well, he might if he knew he was facing a work comp. The gross negligence is an exception, and he had already prevailed at the end of the trial on that issue. That case was going to a jury, and there was evidence, if you look at the record, Silverman admits that this plaintiff's counsel got gross negligence award under factually similar circumstances to the underlying case, where the employee fell asleep driving the car, the truck. And there was evidence that the company didn't train well. And those awards were sustained in those cases on gross negligence standard. And that's in the record. Your time is up. Thank you, Your Honor. Thank you, counsel. We will take this matter under advisement.